J-S22012-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| ANWAR WOODS | : | |
| Appellant | : | No. 1949 EDA 2025 |

Appeal from the Judgment of Sentence Entered March 27, 2025
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0009145-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| ANWAR WOODS | : | |
| Appellant | : | No. 1950 EDA 2025 |

Appeal from the Judgment of Sentence Entered March 27, 2025
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0009146-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| ANWAR WOODS | : | |
| Appellant | : | No. 1951 EDA 2025 |

Appeal from the Judgment of Sentence Entered March 27, 2025
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0009147-2021

BEFORE:  PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

J-S22012-26

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED AUGUST 4, 2026**

Anwar Woods appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County after he was convicted of third-degree murder, conspiracy, recklessly endangering another person ("REAP"),[1] and related offenses at a waiver trial. On appeal, Woods challenges the sufficiency and the weight of the evidence. After careful review, we affirm.

The trial court accurately summarized the facts underlying Woods' convictions as follows:

> The evidence adduced at trial was essentially undisputed, while the inferences to be drawn from the evidence were at issue. That evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, established the following:
>
> On February 8, 2021, at [approximately 2 p.m., Woods], along with his passenger Kevon Johnson, drove to the 200 block of Rubicam [Street] in Philadelphia[, where they] found Raheem Evans standing on the corner. As soon as the vehicle pulled up, with [Woods] in the driver's seat closest to Evans, [Woods] started firing his weapon at Evans. Evans was shot at least twice, but fled and was medically treated for gunshot wounds, then signed himself out of care. The arrival of [Woods] and Johnson at the scene, the shooting of Evans, and Evans' flight are all captured on video.
>
> Also at the location of the shooting was Tiarra Bartlett, who sat in a vehicle she had parked there about 45 minutes earlier, to wait for her cousin with whom she was going shopping. Bartlett's vehicle was across the narrow, one-way street and facing the same direction. [One-year-old child, C.C.,] was in a car seat on the rear passenger side of [Bartlett's vehicle]. As [Woods] was firing at the fleeing Evans, Bartlett started to open the door of her

_____

[1] 18 Pa.C.S.A. §§ 2502(c), 903, and 2705, respectively.

- 2 -

car, at which point Johnson opened his door and fired shots at Bartlett, striking her twice. One of the shots struck Barlett in the forehead, killing her. [C.C. remained physically unscathed throughout the incident. As Johnson opened fire on Bartlett, Woods moved] the car forward very slightly, then stopped [] for Johnson to complete the shooting of Bartlett and fully get back in the car. After Johnson stopped shooting and was back in the car, [Woods] drove off at a high rate of speed. [T]hese events involving the conduct of Johnson, the movement of [Woods'] car, the shooting of Bartlett, and the flight are captured on video.

Four days later, during a stop of [Woods] in the same vehicle pursuant to an unrelated investigation, police observed a fired cartridge casing [("FCC")] against the wipers on the front windshield of [Woods'] vehicle. Upon receiving information that a matching vehicle had been involved in a fatal shooting in the vicinity [four] days earlier, [Woods] was transported to police headquarters, where he was interviewed by homicide detectives.

[Woods] admitted that he had been at the scene of the February 8, 2021[] events, and that he was there to kill [] Evans[, whom Woods did not identify by name but admitted to firing] multiple shots at. [Woods] also admitted that Johnson, who was sitting next to him, opened his car door and fired at Bartlett, who Johnson said had started screaming, even though [Woods] did not hear the screams. [Woods] admitted that he and Johnson both fired .40 caliber handguns during the incident. [Woods informed] detectives that he disassembled his gun and discarded the parts in the sewer.

Eight [FCCs] fired from the same gun were recovered from the scene. Subsequently an FCC was recovered from Bartlett's car. The FCC recovered from [Woods'] windshield did not match those eight [FCCs] from the scene. However, the FCC from [Woods'] car did match the FCC from Bartlett's car. All the ballistic evidence was fired from .40 caliber weapons. Based upon the video evidence, the location of the [FCCs], the relationship (or lack thereof) of the FCC in decedent Bartlett's car to the other [FCCs], the evidence established that [Woods] fired at least eight shots at Evans.

Trial Court Opinion, 11/25/25, at 2-3.

At CP-51-CR-0009145-2021, the court convicted Woods of third-degree murder, conspiracy to commit third-degree murder, firearms not to be carried without a license, carrying firearms in public in Philadelphia, possession of an instrument of crime, and tampering with physical evidence in relation to victim Bartlett.[2] At CP-51-CR-0009146-2021, the court found Woods guilty of attempted murder, conspiracy to commit murder, and aggravated assault in relation to victim Evans.[3] At CP-51-CR-0009147-2021, the court convicted Woods of REAP in relation to victim C.C. On March 27, 2025, the court imposed an aggregate sentence of thirty to sixty years' incarceration followed by one year of reporting probation. Woods timely filed a post-sentence motion, which the trial court denied on July 14, 2025. Woods timely filed a notice of appeal. Both Woods and the trial court have complied with Rule 1925. *See* Pa.R.A.P. 1925(a), (b). On appeal, Woods challenges the sufficiency and weight of the evidence. *See* Appellant's Brief, at 9-10.

Woods avers that the Commonwealth's evidence was insufficient to support his convictions of third-degree murder, conspiracy to commit third-degree murder, and REAP. *See* Appellant's Brief, at 9-10. "A challenge to the sufficiency of the evidence presents a question of law and, as such, our standard of review is *de novo*, and our scope of review is plenary."

---

[2] 18 Pa.C.S.A. §§ 2502(c), 903, 6106(a)(1), 6108, 907(a), and 4910(1), respectively.

[3] 18 Pa.C.S.A. §§ 901(a), 903, and 2702(a)(1), respectively.

- 4 -

*Commonwealth v. Mumford*, 353 A.3d 247, 256 (Pa. Super. 2026)

(quotation marks and citation omitted).

> The standard we apply in reviewing the sufficiency of the evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the factfinder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the factfinder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Murray*, 350 A.3d 258, 262-63 (Pa. Super. 2025)

(brackets and citation omitted).

"Third-degree murder is a killing with malice that is not intentional or committed in perpetration of a felony." *Commonwealth v. Peters*, 355 A.3d 1270, 1281 (Pa. 2026) (internal quotation marks and citation omitted). "Malice is present if the defendant consciously disregarded an unjustified and extremely high risk that his chosen course of conduct might cause death or serious bodily injury." *Id.* at 1286. Accordingly,

> to convict a defendant of the offense of third-degree murder, the Commonwealth need only prove that the defendant killed another person with malice aforethought. This Court has long held that malice comprehends not only a particular ill-will, but also a

wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.

*Commonwealth v. Pledger*, 332 A.3d 29, 34 (Pa. Super. 2024) (brackets and citation omitted).

> [T]o prove the existence of a criminal conspiracy, the Commonwealth must demonstrate that the defendant: (1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy. As conspiracy is itself a substantive crime, a defendant may be convicted of both conspiracy and the offense that was the object of the conspiracy.
>
> The essence of a criminal conspiracy, which is what distinguishes this crime from accomplice liability, is the agreement made between the co-conspirators. It is essential that the co-conspirators have a shared criminal intent. The agreement must rest upon the mutual specific intent to carry out a particular criminal objective.
>
> * * *
>
> Given the nature of a criminal enterprise, the Commonwealth may rely upon circumstantial evidence to prove the existence and scope of the agreement, as it rarely will have direct evidence to support that element of the offense. While the Commonwealth must show more than mere association, it may inferentially establish the conspiracy by the relation, conduct or circumstances of the parties, combined with the overt acts on the part of co-conspirators.

*Commonwealth v. Wellman*, 344 A.3d 13, 19 (Pa. Super. 2025) (citations, quotation marks, and brackets omitted). Regarding the charge of conspiracy to commit third-degree murder, our Supreme Court has further explained that "one does not conspire to commit a denominated offense; one conspires to engage in certain conduct." *Commonwealth v. Fisher*, 80 A.3d 1186, 1195

(Pa. Super. 2013). Thus, where an individual "intends the underlying act ... which results in death, the evidence supports the charge of conspiracy to commit third degree murder." ***Id.***

A person is guilty of REAP "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. "The *mens rea* for REAP is a conscious disregard of a known risk of death or great bodily harm to another person." ***Murray***, 350 A.3d at 263 (emphasis, brackets, and citation omitted). Furthermore, "REAP requires the creation of danger[.]" ***Id.*** (internal quotation marks and citation omitted). Accordingly,

> [t]o sustain a conviction for REAP, the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. Danger, not merely the apprehension of danger, must be created.
>
> The mere act of discharging a firearm, by itself, does not constitute REAP. However, discharging a firearm near another person or in a manner where the projectile could have struck a person is sufficient to prove REAP.

***Commonwealth v. Headley***, 242 A.3d 940, 944 (Pa. Super. 2020) (quotation marks and citations omitted). Notably, "the REAP statute does not require that the Commonwealth identify a specific individual who was in substantial danger." ***Commonwealth v. Brockington***, 230 A.3d 1209, 1216 n.4 (Pa. Super. 2020) (citation omitted).

Woods claims that the Commonwealth presented insufficient evidence to sustain his conspiracy and third-degree murder convictions because "[h]e

was not a principal actor" in the shooting of Bartlett and "[t]here is no legal theory under which [he] can be found legally culpable for [her] death[.]" Appellant's Brief, at 31. Woods concedes that he "had a specific intent to kill [] Evans" and that he and Johnson "entered into a conspiracy to kill [] Evans." *Id.* at 29, 31. However, Woods avers that the shooting of Bartlett was "not a foreseeable consequence" of the conspiracy to kill Evans and "not a product of any direct action by [Woods]" and that, "[a]bsent an explicit agreement" between Johnson and himself to kill Bartlett, "there can be no conviction for conspiracy to commit murder[.]" *Id.* at 29, 25. Woods further claims that the Commonwealth's evidence was insufficient to support his REAP conviction because it failed to establish that Woods "knew, or should have known, that [C.C.] was in the vehicle such that [Woods] could [] be held criminally liable" for Johnson shooting into Bartlett's vehicle. *Id.* at 35. We disagree.

As a preliminary matter, we find that Woods has waived his sufficiency challenge concerning his REAP conviction. "It is well settled that, in order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Walker*, 348 A.3d 1233, 1238 (Pa. Super. 2025) (brackets, emphasis, and citation omitted).

> Specificity prevents the trial court from having to act as counsel for [the] appellant and [ ] anticipate, guess, or predict what [the] appellant wanted to appeal. When an appellant fails to identify in

his Rule 1925(b) statement the specific elements of the specific crimes he is challenging, his claim is waived.

*Commonwealth v. Boyer*, 347 A.3d 689, 699 (Pa. Super. 2025) (quotation marks, brackets, and citations omitted).

In his 1925(b) statement, Woods generally averred that "the evidence was insufficient to find that [he] recklessly endangered [C.C.]" 1925(b) Statement, 7/23/25, at ¶ 3(b). Because Woods failed to specify the element or elements the Commonwealth allegedly failed to prove to sustain his REAP conviction, he failed to preserve his sufficiency challenge for our review. *See Walker*, 348 A.3d at 1238. Accordingly, Woods waived this sufficiency challenge and is not entitled to relief. *See Boyer*, 347 A.3d at 699. Moreover, even if Woods had properly preserved this sufficiency challenge, it would not merit relief for the reasons set forth below.

Upon viewing the evidence introduced at trial in the light most favorable to the Commonwealth as verdict winner, we find that the Commonwealth presented sufficient evidence to sustain each of Woods' challenged convictions under a theory of conspiratorial liability. *See Murray*, 350 A.3d at 262. Contrary to Woods' contentions, it is well-settled that "[c]onspirators need not contemplate the ultimate crime in order to be charged and convicted of conspiracy to commit that crime." *Commonwealth v. Hill*, 348 A.3d 264, 279 (Pa. Super. 2025) (citation omitted).

> Once there is evidence of the presence of a conspiracy, conspirators are liable for acts of co-conspirators committed in furtherance of the conspiracy. Even if the conspirator did not act

as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.

> The general rule of law pertaining to the culpability of conspirators is that each individual member of the conspiracy is criminally responsible for the acts of his co-conspirators committed in furtherance of the conspiracy. The co-conspirator rule assigns legal culpability equally to all members of the conspiracy. All co-conspirators are responsible for actions undertaken in furtherance of the conspiracy regardless of their individual knowledge of such actions and regardless of which member of the conspiracy undertook the action.
>
> The premise of the rule is that the conspirators have formed together for an unlawful purpose, and thus, they share the intent to commit any acts undertaken in order to achieve that purpose, regardless of whether they actually intended any distinct act undertaken in furtherance of the object of the conspiracy. It is the existence of shared criminal intent that is the *sine qua non* of a conspiracy.

*Id.* (citations and quotation marks omitted).

The trial court succinctly addressed Woods' sufficiency challenges to his third-degree murder and conspiracy convictions as follows:

> [I]t is beyond cavil that [Woods] conspired with Johnson to kill Evans. In furtherance of that conspiracy, he drove to the location and personally fired at least 8 shots at Evans, striking him twice. As they started to leave the scene of that attempted murder, Bartlett unintentionally presented herself as a possible witness to the shooting of Evans (or according to [Woods]—a threat). There was a clear causal connection to the conspiracy and [Woods'] shooting of Evans, with Johnson's shooting of Bartlett. That another person would come upon the scene and that a co-defendant would react by shooting that person is not "so extraordinarily remote or attenuated that it would be unfair to hold the [appellant] criminally responsible." [**Commonwealth v. Nunn**, 947 A.2d 756, 760 (Pa. Super. 2008).]

Trial Court Opinion, 11/25/25, at 8. Furthermore, the trial court rejected Woods' sufficiency challenge with respect to his REAP conviction upon determining that "there was a causal connection with the conspiracy to kill Evans in Johnson's firing into Bartlett's [car], and it was foreseeable that other persons would be placed at risk of death or great bodily harm by firing into a car." *Id.* at 8-9. We agree.

Here, the Commonwealth proved, beyond a reasonable doubt, that Woods and Johnson entered into an agreement to kill Evans and acted in furtherance of this conspiracy by shooting at Evans multiple times. *See Wellman*, 344 A.3d at 19. The Commonwealth further proved that, in attempting to fulfill their shared unlawful objective of killing Evans, Johnson killed Bartlett, a witness to the attempted murder of Evans, with malice aforethought by firing into her vehicle and delivering a fatal shot to her head. *See Pledger*, 332 A.3d at 34. Additionally, the Commonwealth proved that Johnson recklessly engaged in conduct that placed C.C., who was also seated in Bartlett's vehicle, in danger of death or serious bodily injury by discharging a firearm into Bartlett's vehicle. *See* 18 Pa.C.S.A. § 2705; *Headley*, 242 A.3d at 944. It is of no moment that Woods and Johnson did not specifically conspire to kill Bartlett or that Woods himself did not shoot into Bartlett's vehicle, as Woods is criminally responsible for the acts Johnson committed in furtherance of their conspiracy to kill Evans. *See Hill*, 348 A.3d at 279.

Woods' contention that the shooting of Bartlett, an innocent bystander who had witnessed the shooting of Evans, was neither a foreseeable consequence nor carried out in furtherance of his and Johnson's conspiracy to kill Evans is unavailing based on the circumstantial evidence before us. Notably, Johnson's shooting of Bartlett occurred in close temporal and physical proximity to the shooting of Evans, and Johnson shot Bartlett to evade apprehension upon realizing that she had witnessed the shooting of Evans. By choosing to open fire on Evans in broad daylight on a city street, the possibility of shooting innocent bystanders and witnesses was certainly foreseeable. Furthermore, based on the manner in which Woods and Johnson agreed to carry out the shooting, one could reasonably infer that Woods and Johnson had contemplated the possibility of shooting innocent bystanders and witnesses in furtherance of their conspiracy to kill Evans. Accordingly, Woods' challenges to the sufficiency of the evidence fail.

We next turn to Woods' challenges to the weight of the evidence.

An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. ... [T]he role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. Thus, to allow an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the trial court. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of

the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Mancuso*, --- A.3d ----, 2026 WL 970728 at *27-28 (Pa. Super. filed Apr. 10, 2026) (citations, brackets, and quotation marks omitted).

Furthermore:

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

An abuse of discretion is not merely an error of judgment[] but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. To mount an abuse-of-discretion attack against the trial court's determination that its guilty verdicts were not so against the weight of the evidence as to shock that court's own conscience, an appellant must demonstrate how the trial court's ruling overrode the law, was manifestly unreasonable, or the product of bias, prejudice, ill-will or partiality. A [weight] claim concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed. The finder of fact exclusively weighs the evidence, assesses the credibility of witnesses, and may choose to believe all, part, or none of the evidence.

*Commonwealth v. Douglas*, 346 A.3d 825, 831 (Pa. Super. 2025) (quotation marks, citations, brackets, and ellipses omitted).

Woods contends that his convictions of third-degree murder and conspiracy to commit third-degree murder are against the weight of the evidence because the Commonwealth did not show that Woods "intended to kill, or shoot at, anyone but [Evans]" or that Woods "believed [Bartlett] was a witness to the Evans shooting." Appellant's Brief, at 33. Woods further

contends that his REAP conviction is against the weight of the evidence because the Commonwealth did not establish that Woods or Johnson knew C.C. was seated in the rear passenger seat when Johnson shot into Bartlett's vehicle. *See id.* at 35.

The trial court rejected Woods' weight challenge as follows:

[T]he court carefully weighed the evidence and credited the evidence and testimony as to [Woods'] conduct in reaching its verdicts. Having sat as factfinder, observing the evidence and testimony, the court's conscience is not at all shocked by those verdicts. To the contrary, the verdicts are consistent with the overwhelming weight of credible evidence.

Trial Court Opinion, 11/25/25, at 10.

We discern no abuse of discretion by the trial court in rejecting Woods' weight challenges. In considering Woods' claims, the court determined that the evidence was not so tenuous, vague, or uncertain that the guilty verdicts shocked its conscience. *See Mancuso*, --- A.3d ----, 2026 WL 970728 at *28. Woods has failed to demonstrate how the trial court's ruling "overrode the law, was manifestly unreasonable, or the product of bias, prejudice, ill-will or partiality." *Douglas*, 346 A.3d at 831 (citation omitted). Accordingly, Woods' challenges to the weight of the evidence fail.

Based on the foregoing, Woods is not entitled to his requested relief, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/4/2026